IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL PALMERIO and TONI KRUC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STATE FARM FIRE AND CASUALTY | : | |
| COMPANY | : | NO.  05-6110 |

## ORDER - MEMORANDUM

**AND NOW,** this 10th day of July, 2006, upon consideration of Defendant's Motion to Dismiss Count II of Plaintiffs' Amended Complaint (Docket No. 6), and all submissions filed in connection therewith, **IT IS HEREBY ORDERED** that said Motion is **GRANTED**.

Plaintiffs commenced this action on September 29, 2005 by filing a Complaint in the Court of Common Pleas of Philadelphia County.  Plaintiffs sought to recover damages, allegedly suffered as a result of a fire, under a homeowners insurance policy issued by Defendant.  On November 22, 2005, Defendant removed the action to this Court on the basis of diversity of citizenship.  The Notice of Removal states that Plaintiffs are citizens of Pennsylvania and that Defendant is an Illinois corporation with its principal place of business in Illinois.  On December 16, 2005, Plaintiffs filed an Amended Complaint, alleging causes of action for assumpsit (Count I), fraud (Count II), and bad faith (Count III).  Defendant subsequently filed the instant Motion to Dismiss Count II, which was opposed by Plaintiffs.  On June 6, 2006, this Court, in response to Defendant's contention that Plaintiffs' fraud claim duplicated their assumpsit claim, ordered supplemental briefing by the parties on whether Count II should be allowed as a free-standing cause of action under the "gist of the action" and "economic loss doctrine" tests.  On June 19, 2006, both Plaintiffs and Defendant filed their supplemental briefs.

Plaintiffs' Amended Complaint alleges the following facts.  As of September 3, 2002,

Plaintiff Paul Palmerio was a named insured under a homeowners insurance policy issued by Defendant and covering Palmerio's residence and property at 208 N. 65th Street in Philadelphia, Pennsylvania. (Am. Compl. ¶ 5.) Plaintiff Toni Kruc was a member of the insured's household at that address and was an insured under the homeowners policy. (Id.) On September 3, 2002, a fire occurred on a premises neighboring Plaintiffs' property, which caused damage to Plaintiffs' residence and personal property. (Id. ¶ 7.) Plaintiffs filed a claim with Defendant for their losses. (Id. ¶ 8.) From September 2002 through September 2004, Plaintiffs and Defendant negotiated the payment of Plaintiffs' claim. (Id. ¶ 9.) Defendant made partial payments to Plaintiffs beginning in November 2002 and continuing until the end of September 2004; following each payment, Defendant would request that Plaintiffs submit additional information and documentation regarding their losses. (Id. ¶¶ 10, 18-19.) Throughout this two-year period, Defendant represented that it would make all payments due under the policy on an ongoing basis as Plaintiffs substantiated their losses, without limitation as to time. (Id. ¶¶ 11, 18-19.) Defendant also represented on numerous occasions that it was reviewing submitted documents for the purpose of making such payments. (Id. ¶ 19.) Plaintiffs, in turn, informed Defendant throughout the negotiations that they would bring suit if Defendant failed to pay all losses due under the policy. (Id. ¶ 12.) At no time did Defendant advise Plaintiffs that the policy contained any time limitations that might bar such a suit; Plaintiffs' homeowners policy, however, did contain a provision stating that a lawsuit against Defendant must be initiated "within one year after the date of loss or damage." (Id. ¶ 12, Ex. A.) At the end of September 2004, Defendant made a partial payment to Plaintiffs and requested that Plaintiffs submit additional information regarding various claim items; Plaintiffs complied with the request but Defendant made no further payments to Plaintiffs. (Id. ¶¶ 10, 18-19.) Plaintiffs commenced this

action in response to Defendant's termination of payment, contending that Defendant still owes them $95,500 for losses which they sustained and which were covered under the policy.  (Id. ¶ 16.)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  The Court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  Cal. Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  A Rule 12(b)(6) motion will be granted when a plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle him or her to relief.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

Plaintiffs' fraud claim alleges that Defendant intentionally misrepresented how it would handle Plaintiffs' insurance claim in order to prevent them from bringing suit.  (Am. Compl. ¶¶ 21-23.)  Plaintiffs argue that Defendant, despite statements to the contrary, did not intend to fully compensate Plaintiffs for their losses under the homeowners policy.  Instead, according to Plaintiffs, Defendant made partial payments to Plaintiffs and falsely represented that it was reviewing Plaintiffs' documents in order to prolong the payment process and string Plaintiffs along, so that when Defendant terminated payments in advance of fulfilling its obligations, Plaintiffs would be left without legal recourse against Defendant per the one-year limitation clause of the policy.  (Id.)  Plaintiffs argue that they reasonably relied on Defendant's intentional misrepresentations, and suffered damages as a result.  (Id. ¶¶ 20, 25.)  Defendant's conduct, Plaintiffs contend, amounts to

fraud as well as breach of contract.

Defendant argues that Plaintiffs' fraud claim is a restatement of their assumpsit claim and thus should be dismissed under Pennsylvania's "gist of the action" test.  While the Pennsylvania Supreme Court has not specifically adopted the "gist of the action" test, the Third Circuit and the Pennsylvania Superior Court have anticipated that it will do so and have applied the test accordingly.  See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001); eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 16, 20 (Pa. Super. Ct. 2002).  Pennsylvania courts use the "gist of the action" test "to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract . . . ."  Bohler, 247 F.3d at 103.  The test "requires tort claims that ultimately arise out of a defendant's failure to adhere to the terms of his contract with the plaintiff to be dismissed, thereby preventing a plaintiff from disguising what is fundamentally a contract claim as a tort claim in order to qualify for punitive damages."  Koresko v. Bleweis, No. Civ. A. 04-769, 2004 WL 3048760, at *2 (E.D. Pa. Dec. 30, 2004) (citing eToll, 811 A.2d at 14).  Under this test, for a claim "'to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral.'"[1]  Bohler, 247 F.3d at 103 (alteration in original) (quoting Redevelopment Auth. of Cambria County v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa.

---

[1]The Superior Court, after an extensive review of numerous Pennsylvania state and federal cases applying the "gist of the action" test, summarized the test's general scope as follows:

> [T]he doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract.

eToll, 811 A.2d at 19 (internal citations and quotations omitted).

Super. Ct. 1996) (en banc)).  Courts make this determination primarily by assessing the nature and

source of the duties which allegedly have been breached by the defendant.  "In other words, a claim

should be limited to a contract claim when 'the parties' obligations are defined by the terms of the

contracts, and not by the larger social policies embodied in the law of torts.'"  Id. at 104 (quoting

Bash v. Bell Tel. Co., 601 A.2d 825, 830 (Pa. Super. Ct. 1992)).  As the Superior Court, addressing

the tort of fraud in particular, elaborated:

> [Pennsylvania] courts have **not** carved out a categorical
> exception for fraud [when applying the "gist of the action" test], and
> have not held that the duty to avoid fraud is always a qualitatively
> different duty imposed by society rather than by the contract itself.
> Rather, the cases seem to turn on the question of whether the fraud
> concerned the performance of contractual duties.  If so, then the
> alleged fraud is generally held to be merely collateral to a contract
> claim for breach of those duties. . . . [Thus,] the gist of the action
> doctrine should apply to claims for fraud in the performance of a
> contract.

eToll, 811 A.2d at 19-20.

    The circumstances alleged in the Amended Complaint indicate that Plaintiffs' fraud claim

falls within the scope of the "gist of the action" test and is duplicative of their assumpsit claim.

Plaintiffs argue generally that Defendant, through its fraudulent conduct, has breached duties which

are implied as a matter of social policy.  All of the alleged intentional misrepresentations, however,

concern issues that arise solely from the contract and Defendant's performance under it: namely, the

extent to which Defendant would compensate Plaintiffs for their losses under the homeowners

policy, and the manner in which Defendant would do so.  Plaintiffs contend that their fraud claim

should be considered distinct from their assumpsit claim because Defendant did not simply fail to

perform under the contract but also misled Plaintiffs as to its intentions by making partial payments

and by representing that it would continue to review Plaintiffs' submissions and compensate them accordingly.  Such conduct, however, does not amount to a free-standing fraud claim under the "gist of the action" test: "if the defendant merely strings along the plaintiff with promises that it will fulfill its contractual obligations and then fails to do so, the gist of the action doctrine bars the plaintiff's tort claim."  Mandel v. Jefferson-Pilot Fin. Ins. Co., No. Civ. A. 04-1436, 2004 WL 1166590, at *1 n.3 (E.D. Pa. May 24, 2004) (citing Owen J. Roberts Sch. Dist. v. HTE, Inc., No. Civ. A. 02-7830, 2003 WL 735098, at *6 (E.D. Pa. Feb. 28, 2003)); see also Caudill Seed & Warehouse Co. v. Prophet 21, Inc., 123 F. Supp. 2d 826, 833-34 (E.D. Pa. 2000) (dismissing a fraud claim as duplicative of a breach of contract claim because the fraud claim simply alleged that the defendant "strung [the plaintiff] along with further promises based on the agreement [between them]").  The Court finds that Defendant's representations regarding compensation concerned Defendant's performance of its contractual obligations and, as such, the alleged fraud is so "inextricably intertwined" with the breach of contract claim that the tort must be considered collateral to the contract.  eToll, 811 A.2d at 21.

Plaintiffs further seek to distinguish their fraud claim by asserting that the claim is grounded in Defendant's efforts to preclude a lawsuit by Plaintiffs, per the one-year limitation clause in the homeowners policy, and that such conduct is separate and distinct from Defendant's performance under the contract.  Plaintiffs rely upon First Republic Bank v. Brand, 50 Pa. D. & C.4th 329 (Ct. Com. Pl. Phila. 2000), which summarizes a number of federal district court opinions in support of the conclusion that

> [c]ourts have generally held that the gist of the action doctrine does *not* apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive

the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant.

Id. at 338-39 (quoting Greater Phila. Health Servs. II Corp. v. Complete Care Servs., L.P., No. 00-2387, 2000 WL 33711052, at *2 (Ct. Com. Pl. Phila. Nov. 20, 2000)).  Such case law is inapposite in the instant case, however, because the alleged fraud arose not from misrepresentations made after the breach of contract, but rather from misrepresentations that Defendant allegedly made about its willingness to fulfill its obligations while it was performing under the contract.  Hence, the conduct underlying Plaintiff's fraud claim is not adequately detached from the contractual performance and relationship to be actionable.  Compare Owen J. Roberts, 2003 WL 735098, at *6 ("[I]f [the defendant] first breached the contract and then made misrepresentations about the breach to prevent the [plaintiff] from asserting its rights under the agreement, we would conclude that the [plaintiff's] fraud claim is sufficiently disconnected from [the defendant's] contractual duties to avoid the gist of the action doctrine.").  Plaintiffs also rely on Fox's Foods, Inc. v. Kmart Corp., 870 F. Supp. 599 (M.D. Pa. 1994), in which the plaintiff's fraud claim was permitted to survive summary judgment in part because the defendant's misrepresentations could "be viewed as intending to induce [the plaintiff] to delay asserting contractual rights." Id. at 609.  In contrast to the instant case, however, the defendant in Fox's Foods made its fraudulent misrepresentations after it had breached its contract with the plaintiff and after the plaintiff, in turn, had given notice of default.  Id.  The court in Fox's Foods also based its determination on evidence suggesting that the defendant entered into the agreement with the plaintiff with no intention to perform as promised.  Id.  There is no comparable indication or allegation here.  Plaintiffs' claims do not call into question anything Defendant may have done either before entering into the contract with Plaintiffs or after allegedly breaching that

contract.  Thus, the alleged fraud in this case cannot be separated from contractual performance as it was in <u>Fox's Foods</u>.  While Plaintiffs might have a legitimate grievance regarding Defendant's alleged manipulation of the terms of the contract during its performance thereof, that dispute can be addressed fully and appropriately under the principles of contract law.  The Court finds that the gist of this action sounds primarily in contract, not in tort, and therefore Plaintiffs' fraud claim cannot stand.

For the reasons stated above, the Court concludes that Plaintiffs' fraud claim should be barred under Pennsylvania's "gist of the action" test.[2]  Accordingly, Defendant's Motion to Dismiss is granted.

BY THE COURT:

/s/ John R. Padova, J.
John R. Padova, J.

---

[2]As Plaintiffs' fraud claim is barred under the "gist of the action" test, this Court will not address Defendant's argument that the claim would also be barred under the "economic loss doctrine" test, or Defendant's argument that Plaintiffs have failed to plead fraud with adequate particularity as required by Federal Rule of Civil Procedure 9(b).